# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| SHAWN MICHAEL CHICK, ) | |
|    Petitioner, ) | |
| ) | Case No. 7:19-cv-00065 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| HAROLD W. CLARKE, ) | United States District Judge |
|    Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Shawn Michael Chick, a Virginia inmate proceeding *pro se*, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 and *Miller v. Alabama*, 567 U.S. 460 (2012), challenging a life sentence imposed on December 3, 1996, for first-degree murder, a crime committed when he was seventeen years old. Respondent has filed a motion to dismiss the petition, and Chick was given an opportunity to respond, but he has not done so, making the matter ripe for disposition.

After review of Chick's claims and the record of all proceedings in the state court, the court concludes that Chick's claim is untimely. Further, the claim was procedurally defaulted in state court, an independent and adequate grounds for the state court's denial of his state habeas petition. Chick has not asserted any grounds for equitable tolling of the statute of limitations, nor has he demonstrated cause and prejudice to overcome the procedural default. For these reasons, the court will grant the motion to dismiss and will deny Chick a certificate of appealability.

### I. BACKGROUND

On December 8, 1995, officers of the Patrick County Sheriff's Department arrested Chick for murder and several other offenses that had just occurred. He was held in a secure detention

facility without bond. (Trial R. 7.)[1] Because Chick was 17 years old at the time, the Commonwealth filed a motion for transfer hearing in the Juvenile and Domestic Relations Court, pursuant to Virginia Code § 16.1-269. (Trial R. 8.) Following the transfer hearing on February 1, 1996, the court transferred Chick to the circuit court to be tried as an adult. (Trial R. 58.)

In the Patrick County Circuit Court, on September 11, 1996, Chick pled guilty to first degree murder, eleven counts of attempted malicious wounding, two counts of using a firearm in the commission of a violent felony, two misdemeanor charges of brandishing a firearm, and one misdemeanor charge of obstruction of justice. (Trial R. 72–73.) Chick acknowledged in writing that the first-degree murder charge carried a penalty range of 20 years up to life in prison. (Notice by Shawn Michael Chick, Ex. 5 to Resp.'s Br. in Supp. of Mot. to Dismiss, Dkt. No. 13-5.) During the plea colloquy, the parties agreed to the following facts:

> [O]n December the 8th, 1995, in the Dry Pond area of this county, Mr. Chick was—had armed himself with a 30/30 lever action rifle and a 20-guage shotgun along the side of the road. He then proceeded to shot [sic] at a series of vehicles as they traveled down that road. One of the shots hit a pick-up truck driven by Mr. Goins and Mr. Goins died almost immediately thereafter as a result of that shot. That several other vehicles were shot at and a number of these vehicles were hit [sic]. After the officers arrived on the scene, ah, Mr. Goins [sic] brandished one of the weapons at Officer Edwards and another individual. After being taken into custody by Officer Edwards, Mr. Chick attempted to grab the officer's pistol during an altercation thereof—rather—relatively brief altercation—until he was restrained.

(Transcript of evidence and incidents in the trial and presentence hearing, "Tr.", September 11, 1996, and December 3, 1996, at 13–14.) The attempted malicious wounding charges arose from

---

[1] Citations herein to "Trial R." refer to records of criminal proceedings from Patrick County Circuit Court in state Case No. CR96-010849-00, paper copies of which are on file with the Clerk. Citations to "Habeas R." refer to records of the state habeas corpus proceedings, Case No. CL16-000607, paper copies of which are also on file with the Clerk. To reference exhibits attached to pleadings in this case, the court will cite to the ECF-generated exhibit and page numbers.

the drivers and passengers of vehicles struck by the bullets that Chick fired.  Chick was not acquainted with Goins or any of the other victims.  (Tr. 43.)  The Commonwealth nolle prossed nine counts of use of a firearm in commission of a felony and related misdemeanor brandishing charges, and the trial judge ordered probation to prepare a pre-sentence report.  (Tr. 19, 21.)

Following the testimony of the probation officer and introduction of the sentencing guidelines, Chick testified on his own behalf at sentencing.  He indicated that he had been using drugs since 1992 and had a serious addiction.  On the date of the incident in 1995, he had been drinking alcohol all day, and he had no memory of the crimes.  When he awoke in jail, he thought he had been arrested for being drunk in public.  (Tr. 36–38.)  The Commonwealth Attorney and the defense stipulated that a blood-alcohol test taken five and a half hours after Chick was taken into custody revealed a BAC of .09.  (Tr. 43–44.)  Chick also made the following apology to the victim's family from the witness stand:

> Most importantly though, this is an apology to the family, friends and loved ones of Elbert Newton Goins.  Those are the people— those are the people that I have hurt the most.  I have taken the life of a man who was a husband, a brother, a father and a grandfather.  It took me less than a second to rip this innocent man away from his loved ones and to destroy a life time of memories, and in less than a second I have caused a life time of pain and suffering.  I can't begin to explain why I did what I did.  I have no memory of most of what happened that day.  I don't remember shooting at anyone and I have no idea why I would do such a thing.  I was out of my mind on drugs that day; however, that is no excuse.  I place all the blame solely on myself.  I will never try to justify what I've done because I know that it could never be justified.  All I know is that from the bottom of my heart, I'm sorry and every day I regret what I've done.  I wish with every ounce of my being that I could give my life to bring back Mr. Goins. . . . I just wanted to tell you that I'm truly sorry for what I've done . . . .

(Tr. 39–40.)

Other witnesses who testified included Chick's mother and Investigator Brent Edwards of the Patrick County Sheriff's Department. Investigator Edwards testified that after Chick had pointed the rifle at him, something prompted Chick to throw the gun down. Chick then ran towards Edwards, "hollering, shoot me, shoot me, over and over." (Tr. 44.) In closing arguments, defense counsel asked the court to consider Chick's youth, his history of depression and emotional problems, his use of alcohol and drugs, and his remorse. He also noted that the sentencing guidelines recommended 30–50 years, and that even receiving a sentence at the low end of the guidelines would keep Chick in prison until Chick was older than the judge and the attorneys in court that day. (Tr. 47–48.) The Commonwealth responded that the results of Chick's actions could have been far worse, with more people dead or seriously injured, and that the guidelines did not sufficiently consider the number of additional charges for which Chick had been convicted. The government attorney also noted Chick's extensive history in the juvenile justice system (seventeen prior contacts with the system) and his difficult behavior in the detention facility after his arrest for the current crimes, suggesting that he was not amenable to rehabilitation. (Tr. 49–52.)

The trial judge sentenced Chick to life in prison for the murder charge, plus a total of 35 years on the other felony charges, with 12 of the years running concurrently, so that Chick's active sentence was life plus 23 years. (Trial R. 76–77.) However, the court allowed Chick to withdraw his guilty pleas on the three misdemeanor charges, and those were dismissed. In announcing his opinion from the bench, the judge listed the numerous opportunities that Chick had been afforded in the juvenile justice system, including homebound detention, staffing by the Community Assessment Team with treatment recommendations and interventions, the Camp on Craig Woods program, and intensive counseling, all to no avail. The judge concluded that

nothing else was available anywhere to rehabilitate Chick, primarily because of Chick's "lack of concern for basic standards of decency and a lack of concern for the dignity of other people in the world with him." (Tr. 54–55.)

Chick did not appeal his conviction or sentence. In January 1998, Chick filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. The court dismissed that petition on June 19, 1998. In 2001, Chick filed a motion to vacate his convictions in circuit court, alleging procedural defects in his juvenile transfer hearing. The court dismissed that motion by order entered July 23, 2001. Chick appealed that decision, but on October 4, 2001, the Court of Appeals of Virginia dismissed the appeal because the notice was not timely filed. On May 10, 2007, Chick filed another motion to vacate judgment on the grounds that the same judge who heard his appeal of the transfer hearing presided over his guilty plea. The circuit court dismissed that motion as untimely on September 25, 2007. (Habeas R. 34–35.)

On October 18, 2016, Chick filed a second petition for writ of habeas corpus in Patrick County Circuit Court, alleging that his life sentence for first-degree murder violates *Miller v. Alabama*. The court dismissed the habeas petition in a written opinion entered on February 9, 2017. The court ruled that the petition was untimely, filed more than ten years after the statute of limitations had run. The court also held that *Miller* did not apply because Chick's sentence was not a *mandatory* life sentence. Finally, the court noted that Virginia Code § 8.01-654(b)(2) barred the petition as a second or subsequent petition. (Habeas R. 33–46.) Chick timely noted his appeal to the Supreme Court of Virginia, which denied the appeal on February 27, 2018. (Va. Sup. Ct. R. 51.)

Chick filed his § 2254 petition on January 28, 2019, by depositing the petition in the institutional mail where he is incarcerated. He raises the same *Miller* claim here that he raised in his second state habeas petition.

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act, a state prisoner must file his claim timely. 28 U.S.C. 2244(d). The statute of limitations for filing a § 2254 petition is one year, which runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The judgment was final more than 20 years ago, so (A) does not apply. Chick has not alleged that anyone or anything prevented him from filing his petition earlier, so (B) does not apply. The claim involves only a legal issue, not a factual one, so (D) does not apply. If Chick's claim is to be deemed timely, it must be under subsection (C).

Chick alleges that subsection (C) applies and that the constitutional right he asserts was made retroactive in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). *Montgomery* was decided January 25, 2016. One year from that date would be January 25, 2017. The statute provides for

6

tolling of the limitation period for "the time during which" a properly filed application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2). Tolling does not delay the beginning of the one-year period; rather, the clock starts running when the event triggering the limitation occurs and keeps running until the year expires or until the clock is stopped by a properly filed state petition for post-conviction relief. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). When the state proceedings are concluded, the year does not start anew; the clock picks up where it left off. *Id.* If the federal one-year statute has expired before state habeas proceedings are filed, then the limitation has run, and state proceedings do not revive the federal cause of action.

Even if the court accepts Chick's argument that his habeas cause of action runs from *Montgomery*, his § 2254 petition is still untimely. Chick mailed his state habeas action from prison on October 18, 2016, and it was received by the Patrick County Circuit Court on October 21, 2016. By October 18, 2016, 267 days of the 365-day limit had run, and 98 days remained. If Chick's state habeas tolled the statute of limitations while it was pending, the clock started running again on February 27, 2018, when the Supreme Court of Virginia denied Chick's habeas appeal. Ninety-eight days from February 27 would be June 5, 2018. The § 2254 petition was not filed until January 28, 2019, when Chick placed the petition in the institutional mail at the prison. That date was more than six months past the one-year statute of limitations. Thus, even under the best-case scenario, Chick's § 2254 petition is untimely.

Further, this best-case scenario does not apply for several reasons. First, the right pursuant to which Chick's challenge is based was announced in *Miller* in 2012. Although the Supreme Court did not conclusively establish the retroactivity of that right until *Montgomery*, the Court has held that the one-year statute of limitations begins on the date that the new constitutional "right asserted was initially recognized by the Supreme Court," not on a later date

when a court decides that the right is retroactive. *Dodd v. United States*, 545 U.S. 353, 357–59 (2005). The Supreme Court decided *Miller* on June 25, 2012. One year from that date was June 25, 2013. Chick did not file any habeas petition based on *Miller*, either in state or federal court, during that year. He filed in state court in October 2016, more than four years later, and in federal court in January 2019, more than six year later.

Second, the statute of limitations is only tolled if the state habeas petition is *properly* filed and pending. The Supreme Court has held that a petition that is untimely when filed in state court is not "properly filed" and does not toll the statute of limitations. *Artuz v. Bennett*, 531 U.S. 4, 11 (2000). Here, the circuit court specifically found Chick's state habeas petition to be untimely under Virginia law. (Habeas R. 35.) The Supreme Court of Virginia declined to hear the appeal. A federal habeas court must presume that a later unexplained judgment upholding a lower court's decision is based upon the same grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Because the state habeas petition was untimely under Virginia law, it was not "properly filed" and could not toll the federal habeas statute of limitations. Besides, the federal statute of limitations had expired more than three years before the state habeas was filed, and even if properly filed, the state habeas could not revive the federal statute of limitations once it expired. *Harris*, 209 F.3d at 328.

The Supreme Court has recognized that the statute of limitations for habeas petitions is subject to equitable tolling, if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 636, 649 (2010). Chick has not argued for equitable tolling, nor has he pled any facts which would support this court in finding that he diligently pursued his rights or that extraordinary

circumstances prevented him from filing in a timely fashion.  Accordingly, Chick's claim herein is untimely.

Even if Chick's petition were timely, *Miller* does not apply to his sentence.  *Miller* held that the Eighth Amendment "forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders."  567 U.S. at 479 (emphasis added).  The Court did not prohibit imposition of a lifetime sentence under any circumstances, but merely prohibited a statutory sentencing scheme requiring a life sentence without considering a juvenile "offender's age and the wealth of characteristics and circumstances attendant to it."  *Id.* at 476.  The sentence imposed on Chick was not mandatory under the law, nor is he denied any "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  *Id.* at 479.

The Patrick County Circuit Court convicted Chick of first-degree murder in violation of Virginia Code § 18.2–32, a class 2 felony.  The penalty for a class 2 felony is 20 years to life in prison.  Va. Code § 18.2-10.  The judge had discretion within that range to impose any sentence he believed appropriate, including a 20-year sentence.  Further, under Virginia Code § 19.2-303, the judge had discretion to suspend all or part of the sentence imposed, including to suspend all or part of the life sentence; such discretion would not be available for a mandatory life sentence.  *Jones v. Commonwealth*, 795 S.E.2d 705, 711 (Va. 2017).  The trial court allowed Chick to present mitigating evidence of his youth and attendant circumstances, and Chick's counsel took full advantage of that opportunity to present mitigating evidence, as discussed in the factual background section of the case.  The trial court considered that information and the arguments of counsel, but ultimately decided that Chick was not amenable to rehabilitation, based upon his prior contacts with the justice system and failed rehabilitative interventions.  (Tr. 54–55.)  That

was the trial judge's decision to make, after considering Chick's youth and all the mitigating evidence provided.

Nor is Chick without hope for release on parole. Chick will be eligible for geriatric release under Virginia Code § 53.1-40.01 when he is 60 years old. Once eligible, Chick will be considered for release using the same factors normally applied in parole determination proceedings, which will provide him the opportunity to demonstrate his maturity and rehabilitation. Because this opportunity for conditional release is available, the Supreme Court of Virginia held that Virginia's geriatric release program satisfies the obligation to provide juvenile offenders an opportunity to demonstrate their maturity and rehabilitation. *Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011). The United States Supreme Court subsequently held that a Virginia state habeas court did not unreasonably apply federal law regarding parole for juvenile offenders serving life sentences by relying on the reasoning in *Angel*. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017).

This court, as are all federal habeas courts, is bound to follow the law discussed above. Because the § 2254 petition herein is untimely, the court must dismiss the petition. In doing so, the court is in no way discounting the substantial rehabilitation that Chick has shown thus far, and the court commends him for the progress he has made, sincerely hoping that these efforts continue. He may then seek conditional release when that opportunity arrives.

### III. CONCLUSION

For the reasons stated, the court will grant respondent's motion to dismiss. Further, concluding the Chick has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

An appropriate order will be entered.

Entered: February 5, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge